[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action to foreclose a mortgage on property in Shelton. The plaintiffs sold the property to the defendants on August 22, 1986 and took back a purchase money mortgage. The defendants did not make the payment due on April 22, 1988 and have not paid anything more to date. The plaintiffs asked a foreclosure of the mortgage.
The defendants in a three count counterclaim allege fraudulent misrepresentation, negligent misrepresentation and breach of contract on the sale of the property to them. The claimed misrepresentations concerns the location of a septic system on the property and the claimed breach of contract concerns the painting of a Colonial House on the property.
The plaintiffs owned a large parcel of land at the corner of Isinglass Road and Kozo Drive. The property was rectangular in shape and extended 355 feet more or less along Isinglass Road and 268 feet more or less along Kozo Drive. On the property was a large Colonial house CT Page 2692 constructed about 1798, a barn and a smaller more modern house, both to the rear of the Colonial house. The property had been part of a development. The land with the two houses and the barn was set off as Lot #4. This lot was bounded northerly 268 feet more or less on Kozo Drive, easterly 220 feet more or less on Isinglass Road, southerly 220 feet more or less on Lot #3, and westerly 215 feet more or less on Lot #7. The remaining part of the plaintiffs' property was Lot #3 of the development and was bounded northerly by Lot #4 220 feet more or less, easterly 135 feet more or less on Isinglass Road, southerly 335 feet more or less on Lot #2 and westerly 150 feet more or less on other land.
Lot #3 was considered by the plaintiffs to be part of Lot #4. On it was located a large in-ground pool, part of which extended onto Lot #4. The pool was filled with water through a pipe from a well on Lot #4 behind the Colonial house. There were electric lights around the pool tied into the electric lines on Lot #4. The foundation of an abandoned barn was in the southwest corner of Lot #4. The barn itself had been razed some time ago.
The plaintiffs wanted to sell the whole property and listed it with a real estate agent in Shelton. The property was described as "Excellent property for contractor or investor, includes extra building lot (1.1 Ac) in-ground pool. . . main house is a historic home built 1798, 5 F/Ps, exterior to be painted . . .", "Lot size M/L 1.5 Ac + 1.1 Ac", "Water well", "Sewers, Septic."
The defendants are a partnership which buys and sells property in Shelton as a business. The plaintiffs' property was advertised in the Bridgeport Post. The defendants saw the ad and were interested because they could sell off the extra building lot to help pay off the mortgage they would have to put on the entire property if they bought it. They looked over the property. The defendant Joseph Alberti talked to the plaintiff Harold Gorman about it. The defendants bought the property and took title on August 22, 1986. Some time later they sold Lot #3 to a third person. While that person was engaged in building a house on the lot and installing a septic system to serve the house, it was discovered that part of the septic system of Lot #4 extended into Lot #3. The defendants then had to spend $9,850 to put the septic system from the Colonial house entirely onto Lot #4.
The defendants claim that they did not know that the septic system for Lot #4 was partly on Lot #3 and CT Page 2693 had they so known they could not have bought the entire property from the plaintiffs. The defendant Joseph Alberti testified that Harold Gorman said the septic system did not extend beyond the building line, that it was on the lot with the Colonial house, that he did not say it went beyond the private hedge, that he made these representations to induce him to buy the house, that he would not have paid $450,000 to have to put the septic system on the old lot. The defendants claim that these were fraudulent or negligent misrepresentations.
The plaintiff Harold Gorman testified that he knew the defendants wanted to subdivide the property, that he told Joseph Alberti that the system leached onto the adjacent field, that he described the leaching field to Joseph Alberti, that Joseph Alberti knew there was a problem and said that we have a problem if we sell the lot and that we have to insulate the lot.
Both Joseph Alberti and Harold Gorman drew on a blackboard their version of the septic system. The Alberti sketch showed all the septic flow from the Colonial house went into a cesspool just south of the house and then into a leach field onto Lot #3 near Isinglass Road. The Gorman sketch showed some septic flow from the Colonial house into a cesspool just south of the house and then onto a leach field on Lot #4 near Isinglass Road. He also drew a pipe leading from the house in a southwesterly direction to a tank of approximately 2200 gallon capacity with a diverter box about six or seven feet from the line between lots #3 and #4 into a leach field about one-half the distance of the line west of Isinglass Road. He completed the sketch by including a pipe running westerly from the barn into Lot #4 and a pipe for the small modern house in the rear to a tank with a leach field west of the tank in Lot #4 and another pipe running southerly into Lot #3.
The Court finds that Harold Gorman's testimony concerning the location of the septic system is credible and the testimony of Joseph Alberti is not. This finding is based on Harold Gorman's comportment as a witness on the stand, his knowledge about the details of the entire septic system, his willingness to answer the questions put to him in detail and without hesitation. Accordingly, the Court finds that Harold Gorman did tell Joseph Alberti that the septic system was partly on Lot #3 and that the defendants' claim of fraudulent or negligent misrepresentation is without merit. Their claim in that regard is denied. CT Page 2694
The defendants also claim that the plaintiffs agreed to paint the exterior of the Colonial house and did not, and that they had the painting done at a costs of $4,700.
To counter this claim the plaintiffs offered in evidence a written memorandum which they say showed that the "outside of the main house to be painted" . . . "as much as possible by the seller prior to closing." Harold Gorman testified that he did do some scraping of the house before the closing, did some painting and on departing left cans of paint for the defendants. The defendants then point to the agreement of sale which specifically states the "sellers work to be done" [among other items] "outside of main house to be painted." The plaintiffs claim that the scrivener of the sellers' agreement did not copy the "memorandum" described above into the "agreement" and should have done so. The Court does not find that this argument has any merit. The "agreement" was obviously scrutinized very carefully by both parties before it was signed. Thus Harold Gorman's name was typed Harold S. Gorman in three places. The letter's was crossed out in each place, the letter "F" was added above the crossed out letter and the initials "HSG" placed alongside the "F". In paragraph 13 the words "/ and occupancy on August 22, 1986" were added on a different typewriter and initialed by "LSL and JLA". The agreement originally was dated "June" 1986. "July 1" was inserted above the word "June". Finally, in the "addendum" attached to the "agreement" in paragraph 2a, "Sellers work to be done", the words "as much as possible", were added and initialed "LSL, JLA". The Court notes that such specific words were not added to paragraph 2g which reads "outside of main house to be painted". The plaintiffs and the defendants signed both the "agreement" and the "addendum". The Court finds that the plaintiffs agreed to paint the Colonial house and did not and the defendants were damaged by this breach of contract to the extent of $4,700.
Thus the plaintiffs' claim that the amount of the principal sum due on the mortgage is $9,232.34 must be reduced by the amount of $4,700.00 to $4,532.34. The Court finds that $4,532.34 is due from the defendants to the plaintiffs on the debt with interest at the agreed on rate from March 22, 1988 when the last payment was made until the debt is paid and that the plaintiffs, as items of costs, are entitled to an appraisal fee of $500 and a title search fee of $150, together with costs, with an attorney's fee of $3,900. CT Page 2695
The law day shall be January 9, 1991.
THOMAS J. O'SULLIVAN TRIAL REFEREE